# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

BRIAN ROBERT LARSON,                       Court File No.

               Plaintiff,

    v.

                                 **COMPLAINT**
                       **and DEMAND FOR JURY TRIAL**

YAMAHA MOTOR CORPORATION,
U.S.A, YAMAHA MOTOR
MANUFACTURING CORPORATION
OF AMERICA, YAMAHA MOTOR CO.,
LTD., and DOES 1 through 100, inclusive,

               Defendants.

Brian Robert Larson (hereinafter "Plaintiff"), by his undersigned counsel, complains against Yamaha Motor Corporation, U.S.A., Yamaha Motor Manufacturing Corporation of America, Yamaha Motor Co., Ltd., and Does 1 through 100, inclusive (hereafter occasionally referred to as "Yamaha" or "Defendants") based upon his personal knowledge as to his own acts, and upon information and belief, as well as upon his attorneys' investigative efforts, as to Defendants' actions and misconduct, alleges as follows:

## Introduction

Plaintiff brings this action to recover damages and/or equitable relief, against Defendants, and each of them, who designed, manufactured, tested, marketed, distributed, promoted, and sold the Yamaha Rhino, a dangerous and defective side-by-side vehicle ("SSV").  When referring to "Defendants" in the plural form herein, Plaintiff intends by that term to mean both Defendants together and each Defendant independently in the singular.

## Parties

1.      Plaintiff, an individual resident of De Smet, South Dakota, sustained injury and

damages associated with his use of Defendants' defective product, a Yamaha Rhino, and due to

Defendants', and each of their, negligent and otherwise wrongful conduct.

2.      On or about July 21, 2007, Plaintiff was the passenger in a Yamaha Rhino when

the vehicle tipped over and Plaintiff suffered devastating injuries to his right leg, resulting in the

damages claimed in this Complaint. Plaintiff has undergone medical treatment and surgeries but

he remains with permanent injuries, disfigurement, and impairment.

3.      The subject incident has had a devastating impact on Plaintiff's life.  Plaintiff

suffered severe fractures to his right leg by the Rhino in a tip over.  Even with medical

treatments and surgeries, the pain that Plaintiff has endured has been unbearable. Plaintiff's right

leg remains disfigured; he experiences severe pain, and is limited in the physical activities he

previously enjoyed.

4.      At all times referenced in this Complaint, Defendant YAMAHA MOTOR

CORPORATION, U.S.A., was and is a California corporation with its principal place of business

in Cypress, California. At all relevant times, YAMAHA MOTOR CORPORATION, U.S.A.

acted in all aspects as agent and alter ego of Yamaha Motor Co., Ltd. in all matters alleged in this

Complaint, and was at all relevant times a wholly-owned subsidiary of Yamaha Motor Co., Ltd.

At all times mentioned in this Complaint, Defendants YAMAHA MOTOR CORPORATION,

U.S.A., Yamaha Motor Manufacturing Corporation of America, Yamaha Motor Co., Ltd., and

DOES 1 through 100, inclusive, designed, engineered, developed, manufactured, fabricated,

assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or

failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed,

wholesaled, and sold Yamaha Rhinos, including the vehicle in which Plaintiff was riding, in South Dakota, Minnesota and throughout the United States.

5.     At all times referenced in this Complaint, Defendant YAMA HA MOTOR MANUFACTURING CORPORATION OF AMERICA was and is a Georgia corporation, with its principal place of business in Newnan, Georgia. At all relevant times, YAMAHA MOTOR MANUFACTURING CORPORATION OF AMERICA acted in all aspects as agent and alter ego of Yamaha Motor Co., Ltd. in all matters alleged in this Complaint, and was at all relevant times a wholly-owned subsidiary of Yamaha Motor Co., Ltd. At all times mentioned in this Complaint, Defendants YAMAHA MOTOR MANUFACTURING CORPORATION OF AMERICA, Yamaha Motor Corporation, U.S.A., Yamaha Motor Co., Ltd., and DOES 1 through 100, inclusive, designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold Yamaha Rhinos, including the vehicle in which  Plaintiff was riding, in South Dakota, Minnesota and throughout the United States.

6.     At all relevant times, Defendant YAMAHA MOTOR CO., LTD. was and is doing business in the States of South Dakota and Minnesota, and was and is an entity of unknown form existing under the laws of Japan. As wholly owned subsidiaries of YAMAHA MOTOR CO., LTD., Yamaha Motor Corporation, U.S.A., Yamaha Motor Manufacturing Corporation of America, and DOES 1 through 100, inclusive, acted in all aspects as YAMAHA MOTOR CO., LTD.'s agent and alter ego. At all relevant times, YAMAHA MOTOR CO., LTD., including its subsidiaries and as of yet unknown predecessors in interest, designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to

inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold Yamaha Rhinos, including the vehicle in which Plaintiff was riding, in South Dakota, in Minnesota and throughout the United States.

7.      Plaintiff is ignorant of the true and correct names and capacities of the Defendants sued in this Complaint as DOES 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed, believes and thereon alleges that each of the fictitiously named Defendants is a company that placed a defective product into the stream of commerce, and/or is an agent, employee, joint venturer, or affiliate of the other Defendants, and is responsible for the unlawful conduct herein alleged, and that said Defendants proximately caused the harm alleged in this Complaint.

## Jurisdiction and venue

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff alleges that the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants failed to recall, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold Yamaha Rhinos within this judicial district and because Defendants are subject to personal jurisdiction within the State of Minnesota.

## Factual Allegations

10.      In or around 1999, Yamaha first began to develop its new side-by-side all terrain vehicle ("ATV"), the 2004 Yamaha Rhino.

11.     Side-by-side vehicles resemble a hybrid between a golf cart and an ATV. It is due to the narrow track width and side-by-side seating that the Yamaha Rhino has been described as a cross between a golf cart and a traditional ATV. However, unlike a golf cart, the Yamaha Rhino is capable of reaching speeds of up to 40 miles per hour, and it is promoted and marketed for off road use in rugged terrain and sand

12.     From 1997 to 2001, the United States Consumer Product Safety Commission (hereafter referred to as "CPSC") estimates that ATV-related injuries rose 104 percent, from an estimated 54,700 to 111,700.

13.     In or around 2003, Yamaha first delivered the 2004 Yamaha Rhino to the market and began selling the Yamaha Rhino within the United States.

14.     Yamaha has continued to develop, manufacture, advertise, promote, market, and sell various models of the Yamaha Rhino through the present.

15.     Since Yamaha first introduced its Yamaha Rhino to the public, the vehicle has become enormously popular.  It has been estimated that over 100,000 Yamaha Rhinos have been sold.

16.     Concurrent with this success, since its introduction to the market in 2003, the Yamaha Rhino's defective design and multiple hazards caused thousands of tip over and roll over accidents, resulting in catastrophic injuries and numerous deaths, including the deaths of several children.  The injuries suffered often include severe crush-injuries to the legs, feet, arms, or hands or drivers and passengers.  Often times these injuries are so serious that the victim has to undergo numerous surgeries or suffer amputation.  Many of these victims have been left with severe scarring and disfigurement. Other common injuries include head injuries, neck injuries, and back injuries.

17.     Between 2004 and 2007, many Yamaha Rhino drivers and owners complained that Yamaha Rhino is unstable even at low speeds, and is prone to tip over.

18.     The Yamaha Rhino is excessively prone to tip over even at lows speeds, on flat terrain, and while conducting safe turns, because of inherent flaws in its design, including having a dangerously narrow track width, high platform, high center of gravity, wheels to small to maintain stability, steering geometry that facilitates rollovers and tip overs, and top-heavy design.

19.     The Yamaha Rhino is significantly narrower than other vehicles in its class because Yamaha designed the Yamaha Rhino to fit in the bed of a standard size pick-up truck and to market that "convenient" feature to consumers.  Unfortunately, this feature resulted in narrow track width and greatly decreased stability.  The Yamaha Rhino's high center of gravity, narrow track width, and side-by-side occupant seating, combine to make the Yamaha Rhino especially susceptible to tipping and rolling over.

20.     Additionally, the Yamaha Rhino has an unpadded, heavy and rigid steel roll cage outlining the entire side of both occupant compartments.  When a Yamaha Rhino tips over, its unpadded roll cage can itself become extremely dangerous, causing severe injuries or death.

21.     Between 2003 and late August of 2007, all Yamaha Rhinos lacked doors, leg guards, or other enclosures to keep occupants' legs inside the vehicle, and handles for passengers to grasp onto in the even of a tip over.  In 2008, Yamaha finally added half-doors and passenger handles to new Yamaha Rhino models, which should have been present from the beginning. However, only some of the 2004 to 2007 models had doors and handles installed pursuant to the special offer on August 27, 2007, when it was too late for many of the victims who were injured or killed by the Yamaha Rhino, including Plaintiff.

22.     Between June of 2003 (when the Yamaha Rhino was first introduced) and September of 2006, the number of injuries and death caused by the Yamaha Rhino continue to rise.  However, rather than recalling the Yamaha Rhino or redesigning it to improve safety, in September of 2006, Yamaha decided to send a letter and new labels to some of the registered owners of Yamaha Rhinos.  The letter discussed the vehicle's propensity to tip over.  Many consumers and users of the Yamaha Rhino never even received this letter or did not receive the letter until it was too late, including Plaintiff.

23.     In March of 2007, the CPSC released a comprehensive report on ATV accidents, injuries, and deaths.  The CPSC estimated that between 1995 and 2004, over 4,400 deaths were caused by four-wheel ATV accidents, including rollovers.  The report also estimated that in 2005, over 136,700 injuries that required hospitalization were caused by these ATVs, and that 30% of those injuries involved children under the age of 16.  Also in 2005, the number of children under 12 who were killed in ATV accidents was 57, which is 12% of all ATV related deaths in 2005.

24.     In July of 2007, rather than recalling the Yamaha Rhino or improving the safety of its design, Yamaha updated the Rhino 2007 Owners Manual.

25.     On August 27, 2007, instead of recalling the Yamaha Rhino or redesigning the vehicle for improved safety, Yamaha sent another letter to some of the Yamaha Rhino owners who had registered their contact information with Yamaha.   At that time, Yamaha mentioned a "special offer" for Yamaha Rhino owners that included installation of doors and handhold on all 2004 and 2007 Yamaha Rhinos.  Unfortunately, many Yamaha Rhino users, including Plaintiff, did not receive this letter until it was too late or did not receive this letter at all.  Other Yamaha Rhino owners complained that they were not able to obtain the doors and handles because the

demand exceeded the supply and dealers informed them that they were backordered.  In addition, the half-doors failed to protect arms and hands.

26.     Prior to September of 2007, the President of Yamaha Motor France, Jean-Claude Olivier, was involved in a Yamaha Rhino rollover incident in which he sustained injuries to on or both of his legs. As a result of this rollover incident, the President of Yamaha Motor France required all Yamaha Rhinos sold in France to be equipped with a design feature to prevent ejection of an occupant and/or an occupant's limbs in a rollover event.

27.     After learning of the design feature that Yamaha Motor France had added to all of its Yamaha Rhinos, Yamaha ordered that the safety feature be removed from all units in the field, Yamaha dealerships, and those in Yamaha warehouses.

28.     In September of 2007, rather than recalling or improving the design of the Yamaha Rhino, Yamaha issued a guide for owners who had the doors installed, which again was only received by certain individuals.

29.     In spite of the increased numbers of injuries and deaths, Yamaha's profits from sales of the Yamaha Rhino continued to rise. In October of 2007, Yamaha announced in its third quarter summary of consolidated business results that "[p]ower product sales were…up 14.5 percent…due mainly to a significant sales increase in side-by-side vehicles in the United States."

30.     On March 31, 2009, a Yamaha Rhino recall was announced.  The recall was issued so that dealers can install a spacer on the rear wheels and remove the rear anti-sway bar to help reduce the risk of rollover.  In addition, the owners of about 145,000 Yamaha Rhinos sold since 2003 have been told to immediately stop using their vehicles and to contact a dealer to schedule a free repair once they become available.  Unfortunately this will only be received by certain individuals.

31.     The fatal consequences of vehicle tip overs and rollovers have been well known since the 1980s when a series of studies revealed that top-heavy vehicles experienced a disproportionate number of rollovers and fatalities. The Insurance Institute for Highway Safety (IIHS) reported in 1980 that top-heavy utility vehicles were rolling over at five times the rate of passenger cars. Accident data from the National Highway Traffic Safety Administration (NHTSA) shows that death and disabling injuries were twice as high in top-heavy utility vehicles compared to passenger cars. In 2003, of the 281,000 vehicle rollovers, well over 10,000 resulted in fatalities, and approximately 170,000 resulted in serious injuries.

32.     Resistance to rollover and tip over is achievable with appropriate design and testing of a vehicle, and improving stability can profoundly reduce morbidity and mortality. However, prior to 2008 Yamaha never made any changes to improve the stability or handling of the Yamaha Rhino, in spite of the availability of several safe and inexpensive designs and feasible modifications.   Further, Yamaha never made any other improvements to the crashworthiness of the Yamaha Rhino, such as adding padding to its roll cage or upgrading its restraint system.

33.     Despite Yamaha's advertisements encouraging Yamaha Rhino use in rugged terrain and sand dunes, the Yamaha Rhino was never properly designed to travel safely off road. The Yamaha Rhino is one of the most top-heavy vehicles ever marketed to the public.  In spite of this, Yamaha has continued to advertise and promote the Yamah Rhino as a safe and rugged all terrain vehicle that could be used by both families and off-road enthusiasts.

34.     The dangerously low Static Stability Factor (a reliable predictor of rollover propensity) of the Yamaha Rhino makes it more prone to tip over than virtually any automobile or truck. But unlike automobiles and trucks that travel mostly on smooth roads designed for

safety, the Yamaha Rhino is advertised for use on uneven ground, where it is at the highest risk of tip over.

36.    Yamaha Rhinos have been sold for years without an enclosed passenger compartment; however, the vehicle's appearance gives consumers a false expectation of safety due to the presence of an exterior roll cage and its side-by-side seating. During the many foreseeable Yamaha Rhino tip overs and rollovers, partial or total ejection of occupants occurs, and contact with the unpadded roll cage causes crush injuries, fractures, amputations, head injuries and even death.

36.    Yamaha has been aware, and has known, since at least 2003, of the propensity of the Yamaha Rhino to tip over, and of the serious injuries and deaths that it could cause to drivers and passengers in tip over and rollover accidents. Since at least 2003, Yamaha's officers, directors, and managing agents, were also on notice of the dangers of the Yamaha Rhino and the injuries that it caused. This notice to Yamaha came in the form of test results, analysis, research, complaints of users, criticisms, lawsuits, claims, and other information. Despite such knowledge, Yamaha refused to recall or redesign the Yamaha Rhino and Yamaha has refused to modify the vehicle to correct its stability and crashworthiness problems until the recall on March 31, 2009.

37.    Yamaha has misled the government, the public, and consumers about the safety of the Yamaha Rhino, and continues to mislead the public and consumers by failing to promptly report all known Yamaha Rhino tip overs, injuries, amputations and deaths to the CPSC, which has been collecting Yamaha Rhino injury and fatality incident data for some time.

38.    The injuries caused by contact with the Yamaha Rhino's roll cage could be reduced in number and severity by the addition of safety padding. The Yamaha Rhino's lower roll bar crushes legs and feet, and the upper roll bar causes arm and head injuries. Roll bar

padding has been available for decades and could dramatically reduce the risk of leg, arm, and head injuries in Yamaha Rhino tip overs.

39.     Yamaha never effectively tested the Yamaha Rhino roll cage's tendencies to injure vehicle occupants. Appropriate testing would have revealed the need for safety padding.

40.     Yamaha also failed to timely install doors, leg guards, or leg restraints on the Yamaha Rhino to assist in keeping occupants' legs inside the vehicle in the event of a tip over or rollover. Yamaha Rhinos manufactured before 2008 had no driver or passenger leg protection. When a Yamaha Rhino tips over or rolls over, the occupants' legs can come out of the vehicle and be crushed. With a dry weight of over 1,000 pounds, the crush injuries to occupants' legs can be debilitating. Medical treatment for crush injuries is often a long and painful process, and in some cases the leg cannot be saved and must be amputated. If the leg can be saved, the injured person may have to endure multiple surgeries. Many victims who suffer crush injuries may be left with a severely impaired and disfigured leg for the remainder of his or her life.

41.     In addition, Yamaha failed to timely install passenger handles or hand holds on the Yamaha Rhino for passengers to grab onto in the event of a tip over or rollover. As a result, many passengers have suffered arm and hand injuries, as well as leg injuries, head injuries, neck injuries, and back injuries.

42.     The wheels placed on the Yamaha Rhino by the Defendants are also too small to properly maintain stability, and the Yamaha Rhino's steering geometry facilitates rollovers and tip overs, which further contributes to the propensity of the Yamaha Rhino to tip over and injure its occupants.

43.     Further, the restraint systems in the Yamaha Rhino are defective, leading to the failure of seatbelts, occupant ejections, and other problems. As a result, many drivers and

passengers in Yamaha Rhino accidents have been ejected or partially ejected, resulting in severe injuries and deaths.

44.     Despite the fact that the Yamaha Rhino has caused numerous injuries, amputations, and deaths throughout the United States and other countries, Yamaha has continued to aggressively market and sell this vehicle in record numbers while earning massive profits.

45.     Yamaha knew about the problems associated with the Yamaha Rhino since at least 2003, Yamaha refused to initiate a recall or redesign the vehicle until March 31, 2009 or properly warn the public.

46.  Defendants also falsely and deceptively misrepresented or omitted a number of material facts concerning the Yamaha Rhino, including, but not limited to, the vehicle's dangerous propensity to tip over, even when operated at low speeds and on flat ground.

47.     As a result of Yamaha's aggressive marketing campaign, and the guise of safety created by Yamaha, numerous consumers were tricked into purchasing and using the Yamaha.

48.     Had the users of the Yamaha Rhino known the full extent of the risks and dangers associated with the use of the Yamaha Rhino, including that these vehicles were not safe to operate even at low speeds and in flat areas, these users would never have used the Yamaha Rhino.

49.     As a result of Yamaha's conscious disregard for the safety of consumers, Plaintiff was severely injured, and many others have been maimed and killed.

## First cause of action:
*Strict product liability – Design defect*

50.     Plaintiff incorporates by reference and alleges all paragraphs previously alleged in this Complaint.

51.     Defendants, and each of them, designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold a certain Yamaha Rhino and its component parts and constituents, which was intended by the Defendants, and each of them, to be used for the purpose of use as an all terrain vehicle, and other related activities.

52.     Defendants, and each of them, knew that the Yamaha Rhino was to be purchased and used without inspection for defects by Plaintiff and the general public.

53.     The subject Yamaha Rhino was unsafe for its intended use by reason of defects in its manufacture, design, testing, components and constituents, so that it would not safely serve its purpose, but would instead expose the users of the product to serious injury because of the failure of Defendants, and each of them, to properly guard and protect the users of the subject Yamaha Rhino from the defective design of the product.

54.     Defendants designed the Yamaha Rhino defectively, causing it to fail to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

55.     The Yamaha Rhino is defective for several reasons, including its top-heavy design, dangerously narrow track width, high center of gravity, wheels that are too small to maintain stability, steering geometry that facilitates rollovers and tip overs even at low speeds and on flat terrain, heavy rigid steel roll cage that has no safety padding, lack of doors, lack of leg guards, or lack of other enclosures to protect occupants, lack of handholds or handles for passengers, and defective restraint systems.

56.     The risks inherent in the design of the Yamaha Rhino outweigh significantly any benefits of such design.

57.     Plaintiff was not aware of the aforementioned defects at any time before the injuries caused by the subject Yamaha Rhino.

58.     As a legal and proximate result of the aforementioned defects of the subject Yamaha Rhino, Plaintiff sustained injuries and damages set forth in this Complaint.

59.     Plaintiff is, therefore, entitled to damages in an amount to be proven at the time of trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

## Second cause of action:
*Strict product liability – Failure to warn*

60.     Plaintiff incorporates by reference and alleges all paragraphs previously alleged in this Complaint.

61.     Defendants, and each of them, knew that the Yamaha Rhino, and its component parts, would be purchased and used without inspection for defects in the design of the vehicle.

62.     The subject Yamaha Rhino was defective when it left the control of each of these Defendants.

63.     Defendants knew or should have known of the substantial dangers involved in the reasonably foreseeable use of Yamaha Rhinos, whose defective design, manufacturing, and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to cause catastrophic injuries, to be inherently unstable, and to have a high propensity to tip over.

64.     Defendants failed to adequately warn of the substantial dangers known or knowable at the time of the defective Yamaha Rhinos' design, manufacture, and distribution.

65.     Defendants failed to provide adequate warnings, instructions, guidelines or admonitions to members of the consuming public, including Plaintiff, of the design and manufacturing defects, which Defendants knew, or in the exercise of reasonable care should have known, to have existed in the Yamaha Rhino, and its component parts.

66.     Defendants knew that these substantial dangers are not readily recognizable to an ordinary consumer and that consumers would purchase and use these products without inspection.

67.     At the time of Plaintiff's injury, the subject Yamaha Rhino was being used in the manner intended by Defendants and in a manner that was reasonably foreseeable by Defendants as involving substantial danger that was not readily apparent to its users.

68.     Plaintiff's damages and injuries were the actual and legal and proximate result of the actions and inactions of the Defendants, who owed a duty to Plaintiff in designing, manufacturing, warning about, and distributing the Yamaha Rhino.

69.     Plaintiff is, therefore, entitled to damages in an amount to be proven at the time of trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as hereinafter set forth.

## Third cause of action:
### *Negligence*

70.     Plaintiff incorporates by reference and alleges all paragraphs previously alleged in this Complaint.

71.     At all time mentioned in this Complaint, Defendants, and each of them, were engaged in the business of designing, engineering, developing, manufacturing, fabricating,

assembling, equipping, testing, inspecting, repairing, retrofitting, labeling, advertising, promoting, marketing, supplying, distributing, wholesaling, and selling a certain Yamaha Rhino, and its component parts and constituents, for use by members of the general public for the purpose of use as an all terrain vehicle.

72.    Defendants owed Plaintiff a duty to exercise reasonable care in the design, engineering, development, manufacturing, fabrication, assembly, equipping, testing, inspection, repair, retrofitting, labeling, advertising, promotion, marketing, supplying, distribution, wholesaling, and selling of the Yamaha Rhino, including a duty to assure that the Yamaha Rhino did not cause Plaintiff, other users, bystanders, or members of the public, to suffer from unnecessary injuries.

73.    Defendants knew or should have known that the Yamaha Rhino is defectively designed and inherently unstable and has a propensity to tip over in foreseeable handling situations, even at low speeds, and can cause injuries and death.

74.    Defendants failed to exercise ordinary care and breached their duty to Plaintiff by, among other things:

      a.    Failure to use due care in designing, engineering, developing, manufacturing, fabricating, assembling, equipping, testing, inspecting, repairing, retrofitting, labeling, advertising, promoting, marketing, supplying, distributing, wholesaling, and selling the Yamaha Rhino, and its component parts, to avoid the aforementioned risks to individuals;

      b.    Failure to provide adequate warning of the instability of the Yamaha Rhino and its propensity to tip over and roll over in foreseeable handling situations, even at low speeds, and to cause or contribute to a tip over or rollover accident;

c.     Failure to properly notify the public and the CPSC of reported incidents of tip over and rollover involving the Yamaha Rhino;

d.     Failure to incorporate within the Yamaha Rhino and its design reasonable safeguards and protections against tip over and rollover, and the consequences thereof;

e.     Failure to make timely corrections to the design of the Yamaha Rhino, such as widening track-width, lowering the center of gravity, or otherwise correct the problem of tip over;

f.     Failure to adequately identify and mitigate the hazards associated with tip over and rollover accidents in accordance with good engineering practices and in other ways;

g.     Failure to add safety padding or other protections to the roll cage of the Yamaha Rhino;

h.     Failure to timely install doors, leg guards, or other leg containment devices to keep occupants' legs within the Yamaha Rhino;

i.     Failure to timely install passenger handles or hand holds on the Yamaha Rhino for passengers to grab onto in the event of a tip over or rollover incident;

j.     Failure to use appropriately-sized wheels to increase the stability of the Yamaha Rhino;

k.     Failure to utilize safe steering geometry on the Yamaha Rhino, to decrease the incidence of tip over or rollover;

l.     Failure to install adequate and safe restraint systems in the Yamaha Rhino.

75.     At all times mentioned in this Complaint, Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the subject Yamaha Rhino was a product of such a nature that if it was not properly designed, engineered, developed,

manufactured, fabricated, assembled, equipped, tested, inspected, repaired, retrofitted, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold, for the use and purpose for which it was intended and it was likely to injure the person or persons by whom it was used.

76.     The Defendants, and each of them, so negligently and carelessly designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the subject Yamaha Rhino, and its component parts and constituents, so that it was in a dangerous and defective condition, and unsafe for the use and purpose for which it was intended when used as recommended by the Defendants, and each of them.

77.     The defective and dangerous character and condition of the subject Yamaha Rhino, and that it was unsafe for the use and purpose for which it was intended when used as recommended by the Defendants, and each of them, was known to the Defendants, and each of them, or in the exercise of ordinary and reasonable care should have been known and discovered by Defendants, and each of them. Furthermore, the dangerous and defective character and condition of the subject Yamaha Rhino was not made known to the Plaintiff by the Defendants, and each of them.

78.     On the aforementioned date, while Plaintiff was using the subject Yamaha Rhino for the purpose for which it was intended, and as a proximate result of the negligence and carelessness of the Defendants, and each of them, the subject Yamaha Rhino, was caused to tip over, thereby causing serious and severe injuries to the Plaintiff as alleged in this Complaint.

79.     As a direct and proximate result of the negligence and carelessness of Defendants, and each of them, Plaintiff was made sick, sore, lame and disabled, and was caused to and did suffer and sustain serious injuries. Plaintiff suffered severe and excruciating pain and distressing mental anguish as a result of those injuries, and Plaintiff has also suffered general shock and trauma as a result of the negligence and carelessness of the Defendants, and each of them. Plaintiff has suffered, and for a long period of time to come will continue to suffer, pain and mental anguish as a result of those injuries.

80.     In the treatment of the aforesaid injuries, Plaintiff has incurred, is presently incurring, and will incur, liability for the services of physicians, surgeons, nurses, hospital care, medicine, x-rays, rehabilitation, and other medical treatment, the true and exact amount being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this Complaint accordingly when the true and exact cost is ascertained by Plaintiff.

81.     As a direct and proximate result of the negligence and carelessness of Defendants, and each of them, Plaintiff has incurred, and will incur, loss of income, wages, profits and commissions, a loss of earning capacity, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiff, and leave is requested to amend this Complaint to conform to proof at the time of trial

82.     Plaintiff has lost prejudgment interest, the exact amount of which Plaintiff prays leave to insert in this Complaint when finally ascertained.

83.     Plaintiff's damages and injuries were the legal and proximate result of the actions and inactions of the Defendants, who owed a duty to Plaintiff in designing, manufacturing, warning about, and distributing the Yamaha Rhino.

84.     Plaintiff is, therefore, entitled to damages in an amount to be proven at the time of trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth in this Complaint.

## Fourth cause of action:
*Breach of implied warranty*

85.     Plaintiff incorporates by reference and alleges all paragraphs previously alleged in this Complaint.

86.     Before the Yamaha Rhino was being used by Plaintiff at the time of the subject incident, the Defendants, and each of them, impliedly warranted to members of the general public, including Plaintiff, that the subject Yamaha Rhino was of merchantable quality and safe for the use for which it was intended by the Defendants, namely, for the purpose of use as an all terrain vehicle, and other related activities.

87.     Plaintiff relied on the skill and judgment of Defendants, and each of them, in the selection, purchase and use of the subject Yamaha Rhino.

88.     The subject Yamaha Rhino was not safe for its intended use nor was it of merchantable quality as warranted by Defendants, and each of them, in that it was defectively designed, thereby dangerously exposing the user of the Yamaha Rhino and those around it to serious injury.

89.     After Plaintiff received the injuries complained of as a result of the defective condition of the subject Yamaha Rhino, notice was given by Plaintiff to Defendants, in the time, manner, and form prescribed by law, of the breach of the implied warranty.

90.     As a legal and proximate result of the breach of the implied warranty, Plaintiff sustained the injuries and damages set forth in this Complaint.

91.     Plaintiff is, therefore, entitled to damages in an amount to be proven at the time of trial.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth in this Complaint.

## Fifth Cause of Action
### *Fraudulent Misrepresentation*

92.     Plaintiff incorporates by reference and alleges all paragraphs previously alleged in this Complaint.

93.     Defendants made fraudulent misrepresentations with respect to the Yamaha Rhino by falsely and deceptively misrepresenting or omitting a number of material facts concerning the Yamaha Rhino, including, but not limited to, the vehicle's dangerous propensity to tip over, even when operated at low speeds and on flat ground.

94.     Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risk of the Yamaha Rhino to consumers, including Plaintiff.

95.     The representations were made by Defendants with the intent that consumers, including Plaintiff, rely upon them.

96.     Defendants' misrepresentations were made with intent of defrauding and deceiving Plaintiff and other consumers, to induce and encourage the sale of Yamaha Rhinos.

97.     Plaintiff and other consumers relied upon the representations

98.     Defendants' fraudulent misrepresentations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

99.     As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff sustained severe injury more fully set forth above.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth in this Complaint.

## Sixth cause of action:
*Fraudulent Concealment*

100.    Plaintiff incorporates by reference and alleges all paragraphs previously alleged in this Complaint.

101.    Defendants fraudulently concealed information with respect to the Yamaha Rhino by representing that the Yamaha Rhino was safe and fraudulently withholding and concealing information related to the Yamaha Rhino's dangerous propensity to tip over, causing severe injury and death.

102.    Defendants had sole access to the material facts concerning the dangers and unreasonable risk of the Yamaha Rhino.

103.    The concealment of information by Defendants about the risks of the Yamaha Rhino was intentional, and the representations made by Defendants were known by Defendants to false.

104.    The concealment of information and the misrepresentations about the Yamaha Rhino were made by Defendants with the intent that consumers, including Plaintiff, rely upon them and with the intent to defraud consumers.

105.    Plaintiff and other consumers relied upon the representations and were unaware of the substantial risks of the Yamaha Rhino which Defendants concealed from Plaintiff and other consumers.

106.    As a direct and proximate result of Defendants' fraudulent concealment and misrepresentation, Plaintiff sustained severe and permanent injuries as more fully set forth above.

107.    Defendants' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth in this Complaint.

## Demand for a jury trial

Plaintiff demands a jury trial as to all claims that may be tried by a jury in this action.

## Prayer for relief

WHEREFORE, Plaintiff requests of this Court the following relief:

  A.  For general damages, in an amount to be proven at the time of trial;

  B.  For medical, incidental, hospital, and other expenses, in an amount to be proven at the time of trial;

  C.  For loss of earnings and earning capacity, in an amount to be proven at the time of trial;

  D.  For an award of pre-judgment and post-judgment interest as provided by law;

  E.  For consequential damages, in an amount to be proven at the time of trial;

  F.  For an award providing for payment of costs of suit, including payment of experts' fees and expenses;

  G.  For an award of reasonable attorneys' fees, to the full extent provided by law;

  H.  Physical pain and suffering of Plaintiff; and

  I.  For such other and further relief as this Court may deem just and proper.

Dated: <u>March 31, 2010</u>                              Respectfully submitted,

                                        LAW OFFICES OF CHARLES H. JOHNSON, P.A.


                                        By: _____/s/Charles H. Johnson_____
                                             Charles H. Johnson, Esq. (#50696)
                                             bdehkes@charleshjohnsonlaw.com
                                             Anna M. Yakle, Esq. (#389158)
                                             ayakle@charleshjohnsonlaw.com
                                             2599 Mississippi Street
                                             New Brighton, MN 55112
                                             Tel (651) 633-5685
                                             *Attorneys for Plaintiff*